IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01524-NRN

RICHARD WOLF

      Plaintiff,

v.

MEADOW HILLS III CONDOMINIUM ASSOCIATION, CAROL WILLIAMS, STEPHANE

DUPONT, and WINZENBURG, LEFF, PURVIS & PAYNE LLP,

      Defendants.

---

## DEFENDANTS STEPHANE DUPONT AND WINZENBURG, LEFF, PURVIS & PAYNE LLP'S ANSWER AND JURY DEMAND TO AMENDED COMPLAINT

---

Defendants, Winzenburg, Leff, Purvis & Payne LLP and Stephane Dupont (collectively "WLPP", through counsel, Nemirow Perez, P.C., hereby submit their Answer and Jury Demand to Plaintiff's Amended Complaint as follows:

## RESPONSE TO NATURE OF ACTION

1.    This action is brought pursuant, *inter alia,* to federal statutes including 42 U.S.C. §§ 3604(f)(2), 3604(f)(3)(A), and 3604(0(3)(B) to recover for intentional discrimination. This action also asserts claims sounding in breaches of fiduciary duty and violations of both the statutory and common law duties of good faith and fair dealing.

**RESPONSE: Admitted.**

## I.   RESPONSE TO PRELIMINARY STATEMENT

2.      Plaintiff, a physically and mentally disabled man, effectively had his home taken from

him because of his disabilities.

**RESPONSE: Denied for lack of information.**

3.      To wit, Plaintiffs former homeowners' association, Defendant Meadow Hills III

Condominium Association (the "Association") through its board president Defendant

Carol Williams, conspired with lawyers, including WLPP and Stephane Dupont to treat

Plaintiff differently than other members of the Association because of Plaintiffs

disabilities.

**RESPONSE: Denied.**

4.      After a run of the mill homeowner's association dispute between Plaintiff and the

Defendant Association, the Association sought to recover assessments, fees, and penalties

from Plaintiff through a court action for money damages. Plaintiff counterclaimed.

**RESPONSE: Denied for lack of information.**

5.      However, on the eve of trial, the Association abandoned its county-court money damages

case and instead decided to foreclose on Plaintiffs home.

**RESPONSE: Denied for lack of information.**

6.      There was a critical and illegal reason for the Association's abandonment of its county-

court money damages action and subsequent institution of a foreclosure action, and that

reason was Plaintiff's disabilities.

**RESPONSE: Denied.**

7.      Upon information and belief, the Association's lawyers—Defendants WLPP and Dupont advised the Association and Defendant Williams that the Association should adopt a policy of always seeking foreclosure against disabled members, because disability monies are generally exempt from post-judgment garnishments and attachments.

**RESPONSE: This allegation calls for the invasion of the attorney-client privilege. Without waiving the privilege and expressly subject to it: Denied.**

8.      Such policy was a departure from the Association's history of enforcing its assessments through seeking money judgments before resorting to foreclosure against a member.

**RESPONSE:  This allegation calls for the invasion of the attorney-client privilege. Without waiving the privilege and expressly subject to it: Denied.**

9.      Upon information and belief, the Association was advised by its lawyers to always seek the remedy of foreclosure against disabled persons rather than give disabled persons the same opportunity as non-disabled persons to pay a money judgement and keep their home.

**RESPONSE: This allegation calls for the invasion of the attorney-client privilege. Without waiving the privilege and expressly subject to it: Denied.**

10.     Such policy with respect to the disabled presumes an insidious stereotype that all disabled persons are on the dole and asset-less, unable to pay money judgements and therefore a creditor's only recourse against a disabled person is foreclosure or repossession because any disability income is generally not subject to attachment or garnishment.

**RESPONSE: This allegation calls for the invasion of the attorney-client privilege. Without waiving the privilege and expressly subject to it: Denied.**

11.     Such generalization of a protected class is abhorrent, and policies reflecting such

abhorrent generalizations result in treating abled people differently than the disabled when enforcing covenants or seeking to collect assessments.

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these defendants deny it.**

12.     Upon information and belief, the Association initially resisted the advice given to it by its lawyers—Defendants WLPP and Dupont—to abandon its policy of first seeking county-court money judgments against its members, be they disabled or abled, and instead adopt a policy of always seeking to foreclose on disabled members.

**RESPONSE:  This allegation calls for the invasion of the attorney-client privilege and the work product doctrine. Without waiving these privileges and expressly subject to it: Denied.**

13.     Ultimately, however, upon information and belief, the Association took the advice of its lawyers, notwithstanding that the Association knew it was making a decision detrimental to Plaintiff on the basis that he was and is disabled.

**RESPONSE: This allegation calls for the invasion of the attorney-client privilege. Without waiving the privilege and expressly subject to it: Denied..**

14.     This complaint arises from those illegal and bad faith actions of the Association and its counsel, actions designed to: a) deprive Plaintiff of being treated the same as abled persons, and b) consume a housing estate through foreclosure, and collection of assets, evict and harass in retaliation for asserting civil rights.

**RESPONSE: Denied.**

15. Such actions, committed against a vulnerable and disabled homeowner, constitute, *inter alia,* predatory abuse of power and process as well as violation of federal anti-discrimination laws.

**RESPONSE: Denied.**

## II.  RESPONSE TO PARTIES

16. Plaintiff, Richard Wolf ("Wolf") is a citizen of Nevada, with an address located at 1591 South Dandelion Street, Apt 7, NV 89048.

**RESPONSE: Denied for lack of information.**

17. Defendant Meadow Hills III Condominium Association is a nonprofit Colorado corporation with its center of operations located in Colorado. The Association is, upon information and belief, in good standing to conduct business in the State of Colorado.

**RESPONSE: Admitted.**

18. Defendant Carol Williams, upon information and belief, was the President of Defendant Meadow Hills III Condominium Association during the wrongdoing as alleged herein. Upon information and belief, Williams is a Colorado citizen residing at 4044 South Carson Street, Unit H, Aurora, Colorado 80014.

**RESPONSE: Denied for lack of information.**

19. Defendant Winzenburg, Leff, Purvis & Payne LLP is a Colorado law firm registered as a limited liability company. Upon information and belief, all of WLPP LLP's members are citizens of Colorado.

**RESPONSE:** Defendants affirmatively allege that Winzenburg, Leff, Purvis & Payne LLP is a Colorado limited liability partnership. Defendants deny the remaining allegations of this

paragraph.

20.     Defendant Stephane Dupont, a citizen of Colorado, is an attorney licensed in Colorado.

      He was employed at WLPP at all relevant times, until January 2018.

**RESPONSE: Admitted that Dupont was employed by WLPP until January 15, 2018. The**

**remainder is denied for lack of information.**

### III.     RESPONSE TO JURISDICTION

21.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §

      1332 due to all parties being citizens of different states and the amount in controversy

      exceeding $75,000.00.

**RESPONSE: Admitted that Plaintiff is claiming at least $75,000. That he has a right to that**

**sum is denied.**

22.     This Court also has federal question jurisdiction under 28 U.S. Code § 1331.

**RESPONSE: Denied, including for a failure on the part of the Plaintiff to exhaust required**

**administrative remedies.**

23.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the Defendants are

      subject to the laws of Colorado in this matter and all Defendants reside within the District

      of Colorado.

**RESPONSE: Admitted.**

### IV.     RESPONSE TO GENERAL ALLEGATIONS

### a. General Background

24.     Plaintiff Wolf was at all relevant times physically and mentally disabled as defined by the

      Fair Housing Act, 42 U.S.C. §3602 (h).

**RESPONSE: Denied for lack of information.**

25.   Plaintiff Wolf was declared physically and mentally disabled by the Federal Social

Security Agency effective October 2010.

**RESPONSE: Denied for lack of information.**

26.   Wolf's Disability includes diagnosis and treatment for multiple forms of heart disease

leading to congestive heart failure and arrythmia, beginning around 2005.

**RESPONSE: Denied for lack of information.**

27.   Wolf s Disabilities include Diabetes, first diagnosed around 2008 as type 2 and

advancing to types 1 and 2 around 2013.

**RESPONSE: Denied for lack of information.**

28.   Wolf's disabilities include various diagnosed mental disorders that arose at childhood,

including DSM (IIIR and V) Panic disorder with associated Agoraphobia, Sociophobia,

Generalized Anxiety, and Atypical Major Depression.

**RESPONSE: Denied for lack of information.**

29.   Wolf's health and mobility issues also include diagnoses of a contagious form of MRSA

(with sepsis) beginning September 2017 and ongoing. Wolf has two partial amputations

of his left foot, with atrophy in both legs, and cannot walk normally. He is diagnosed

permanently mobility impaired (handicapped).

**RESPONSE: Denied for lack of information.**

30.   Plaintiff Wolf has received social security disability income (SSDI) since 2013.

**RESPONSE: Denied for lack of information.**

31.   On or around July 18, 2013, Plaintiff Wolf purchased the property located at 4094 South

Carson Street, #C, Aurora, CO 80014, in the incorporated city of Aurora and the county of Arapahoe, governed by the Association.

**RESPONSE: Denied for lack of information.**

32.    The Association and its members are subject to Colorado common interest ownership laws, codified in Colorado's Common Interest Ownership Act ("CCIOA") as well as the governing documents of the Association.

**RESPONSE: The Colorado Common Interest Ownership Act applies to common interest communities, and even then to varying degrees. *See* 38-33.3-117, C.R.S. CCIOA does not apply to the members of any association. Any remaining allegations are denied. .**

33.    Plaintiff Wolf resided at that property from the day it was purchased until the day it was sold after a lawsuit for foreclosure was lodged against Wolf by the Association.

**RESPONSE: Denied for lack of information.**

34.    Under Colorado law, Associations have nearly unmatched power to enforce CCIOA and duly and lawfully enacted covenants and bylaws. Such power includes the power to impose charges for late payments of assessments, recover reasonable attorney fees (and other legal costs) for collection of assessments.

**RESPONSE: Denied.**

35.    After notice and an opportunity to be heard, Associations may levy reasonable fines for violations of the declaration, bylaws, and rules and regulations of the Association.

**RESPONSE: Denied for lack of information. *See* 38-33.3-302 and 38-33.3-209.5, C.R.S...**

36.    The Association's declaration (the "Declaration") is recorded in Arapahoe County at clerk/record Book 74, Page 37.

**RESPONSE: Denied for lack of information.**

37.     The Declaration includes governance articles as defined by CCIOA.

**RESPONSE: As the term "governance articles" is not a term under CCIOA it is not possible to understand what Plaintiff refers to, and as such the allegations are denied for a lack of information.**

38.     Since the Declaration was recorded, CCIOA was amended to require associations to adopt a set of policies, including a policy regarding, "Responsible governance policies - due process for imposition of fines - procedure for collection of delinquent accounts — definition"

**RESPONSE: Denied. Under 38-33.3-209.5 and 38-33.3-302, C.R.S. the Association had those duties and obligations which the law required subject to 38-33.3-117, C.R.S.**

39.     Around February 2013, the Association complied with this new law by adopting a set of governance policies (hereinafter the "Association Statutory Policies").

**RESPONSE:  Denied for lack of information.**

                    **b. The Initial Dispute Arises Over Wolf's Claim for $5,700.**

40.     On or about November 9, 2015, a money dispute arose between Wolf and the Association after the building was structurally damaged, along with Wolf's unit, by flooding from the above neighbor.

**RESPONSE: Denied for lack of information.**

41.     The Association refused to file an insurance claim.

**RESPONSE: Denied.**

42.     Wolf attempted to resolve a dispute for damages and collection fees through the

Association's policies and procedures.

**RESPONSE: Denied for lack of information.**

43.     Wolf was denied his right to "seek" his $5,700 in damages, or enter into alternative dispute

resolution as the Association's polices (sic) required.

**RESPONSE: Denied for lack of information.**

44.     Wolf declined to pay certain assessments to the Association as the dispute was ongoing.

**RESPONSE: Denied for lack of information.**

45.     When Wolf was advised to pay the assessments, his three attempts to do so failed, upon

information and belief, because the Association had turned the matter over to its counsel

for collection.

**RESPONSE: Denied for lack of information.**

46.     A review of the lien and dispute resolution history of the Association reveals that money

disputes have historically been addressed through county-court civil actions for money

damages, not through foreclosure, at least not in the first instance.

**RESPONSE: Denied for lack of information.**

47.     A monetary dispute issue was brought against Plaintiff Wolf by the Association in

Colorado county court in the form of a complaint for damages, in the same manner as any

case in the Association's history that involved nonpayment of assessments.

**RESPONSE: Denied for lack of information.**

48.     Each party had facts, defenses and evidence exchanged, and were ready for county-court

trial.

**RESPONSE: Denied for lack of information.**

### c. Lawsuit in County Court filed then dismissed by Association

49.    As stated above, The Association commenced an action in Arapahoe County Court, No. 2016C-39616, against Wolf for Money damages on or about June 9, 2016, seeking amounts owed from past due assessments.

**RESPONSE: Admitted.**

50.    Also as stated, Plaintiff Wolf answered with a counterclaim and affirmative defenses including his claim for his $5,700 loss.

**RESPONSE: Admitted.**

51.    At that point, only a money dispute existed between Wolf and the Association.

**RESPONSE: Denied for lack of information.**

52.    Trial in the aforementioned county court money damages case was set for November 30, 2016.

**RESPONSE: Admitted that trial was set for November 30, 2016; remainder denied for lack of information.**

53.    At a September 28, 2016 Association board meeting, the Association voted to continue to proceed with a county-court action for money damages—not foreclosure—set for November 30, 2016, as evidenced by the minutes of that meeting provided in a records request around April 2019.

**RESPONSE: Denied for lack of information.**

54.    However, unlike any other case in the Association's history, the Association's county-court case against Wolf case was suddenly abandoned by the Association with no explanation to Wolf for the posture change.

**RESPONSE: Denied.**

55.    Wolf then discovered a complaint for foreclosure was being filed by the Association in Colorado district court.

**RESPONSE: Denied for lack of information.**

### d. Discovery of Plaintiff's Disabilities by Association

56.    Critically, in answering the Association's initial county-court complaint, Wolf disclosed his protected status ("SSDI" disability income) while applying for waiver of fees to answer, which was granted by the court.

**RESPONSE:  Denied for lack of information.**

57.    The Association and WLPP thus discovered Wolf's protected status and Wolf's alleged reliance on disability income and opposed the granted motion for fees to be waived for Wolf s filings.

**RESPONSE: Denied.**

58.    Upon information and belief, prior to this, the Association knew that Plaintiff had mental and physical disabilities, through conversations among board members.

**RESPONSE: Denied.**

59.    WLPP's billing records, provided during a statutory records request in or around April 2019, revealed that a WLPP attorney referred to by his initials as "SRD" (upon information and belief, Defendant "Stephane Robert Dupont") began advising the Association on foreclosure options, only after discovery of Plaintiff Wolf's disability and protected status on or about June 29, 2016.

**RESPONSE: Denied.**

60.     That same billing statement revealed that Defendant Dupont billed the Association for efforts to determine equity for a possible foreclosure, on September 15, 2016.

**RESPONSE: Denied.**

61.     It is now clear that Dupont's advisements on how to deal with Wolf's allegedly due and owing assessments were guided by Wolf's status as a disabled person.

**RESPONSE: Denied.**

62.     Upon information and belief, but for Plaintiff's status as a disabled person, the Association's lawyers would not have advised the Association to foreclose in lieu of seeking only money damages. In addition, upon information and belief, but for Plaintiff's status as a disabled person, the Association would not have foreclosed upon Plaintiff's home.

**RESPONSE: Denied.**

63.     Stereotyping Wolf by assuming he was unable to pay a money judgment because he was and is disabled and in a protected class is actionable as discrimination under Title VII of the Civil Rights Act of 1964.

**RESPONSE: Denied.**

64.     Additionally, Association policy prohibits "grouping" members when creating or using policy and procedure. *(See* policy "Adoption and amendment of policies and procedures part 6 "Impact does not create separate groups of Members"). As such, stereotyping Wolf was a breach of Association covenants.

**RESPONSE: Denied for lack of information.**

65.     Upon information and belief, Defendant Dupont advised the Association that it should

treat disabled Association members differently than non-disabled members in choosing whether to initially foreclose or seek only a money judgment when attempting to collect unpaid assessments in the first instance.

**RESPONSE: Denied.**

66.    Although demanded several times, including in connection with a Colorado Civil Rights Division ("CCRD") investigation, the Association has refused to offer a "lawful purpose" for its decision to foreclose on Wolf and, upon information and belief, Wolf's disabilities were the sole reason for the decision.

**RESPONSE: Denied.**

### e. Foreclosure and Bankruptcy

67.    Colorado Revised Statute Section 38-33.3-316 requires the Association board to formally resolve and authorize foreclosure.

**RESPONSE: These allegations purport to restate applicable law and do not require a response from these Defendants.**

68.    The Association's resolution and authorization to foreclose was signed by Defendant Williams on November 4, 2016.

**RESPONSE: Denied for lack of information.**

69.    The Association's complaint for Foreclosure was filed on November 7, 2016 in Colorado district court, case number 2016CV032669.

**RESPONSE: Admitted.**

70.    The Association then sought to consolidate its county-court claims into its newly initiated district court action for foreclosure.

**RESPONSE: Denied.**

71.     On November 11, 2016, Wolf filed a Chapter 13 Bankruptcy petition (16-21238 MER).

**RESPONSE: Denied.**

72.     The foreclosure case was stayed on November 19, 2016 pursuant to the bankruptcy filing.

**RESPONSE: Denied for lack of information**

73.     The Association filed an amended claim in Colorado district court June 21, 2018 for foreclosure, based on the same foreclosure authorization signed by Williams.

**RESPONSE: Admitted**

### f. Housing Discrimination Based on Stereotyping Protected Class

74.     As noted, trial in the aforementioned county court money damages case, initially filed by the Association, was set for November 30, 2016.

**RESPONSE: Admitted that trial was set for November 30, 2016; remainder denied for lack of information.**

75.     At the September 28, 2016 Association board meeting, the Association voted to proceed with the county-court trial for money damages set for November 30, 2016, as evidenced by the minutes of that meeting provided in a records request around April 2019.

**RESPONSE: Denied for lack of information.**

76.     WLPP billing records, provided during a statutory records request in 2019, disclosed that, after the September 2016 board meeting, Association counsel Defendant Stephane DuPont, upon information and belief, convinced the Association to forego the county-court action seeking only money damages and to instead start a new district court action to foreclose on Plaintiff's property.

**RESPONSE: Denied.**

77.    As noted and upon information and belief, this change of policy by the Association to foreclose on disabled persons in the first instance rather than seeking only money damages began with the Association's treatment of Wolf

**RESPONSE: Denied.**

78.    Upon information and belief, the reason Dupont and WLPP advised the Association to abandon its county court action and foreclose on Wolf rather than proceeding to seek a money judgment only was because Plaintiff Wolf was disabled and, as such, Dupont adopted the stereotype that Wolf, because he was disabled, had no assets or income that was susceptible to garnishment or attachment.

**RESPONSE: Denied.**

79.    Upon information and belief, Wolf's disabilities were the sole motivating factor in Dupont and his then-law firm WLPP, advising the Association to change course and seek foreclosure.

**RESPONSE: Denied.**

80.    According to those referenced billing records, on November 4, 2016, Mr. Dupont had a telephone conference with the Association board members and community association manager and advised to proceed with judicial foreclosure.

**RESPONSE: Denied for lack of information.**

81.    Those same records show that an authorization-to-foreclose form (per CCIOA and Policy), drafted by Defendant Dupont, was sent by Defendant WLPP.

**RESPONSE: Denied for lack of information.**

82.   On or around November 4, 2016, the authorization and resolution was signed by Defendant Williams after a vote by all board members.

**RESPONSE:  Denied for lack of information.**

83.   Upon information and belief, and based upon time records, Dupont and WLPP were guided by a published directive which indirectly advised associations to foreclose on the disabled, titled "Five Delinquent Homeowners You Will Meet in Court (and One You Won't)":

> "The 'Judgment Proof' Owner...This is an owner who is retired and/or ***on disability*** with no plans of ever working again. In fact, they usually have no assets at all.... When a Judgment Proof Owner's home holds equity, the association may choose to foreclose their assessment lien." (Emphasis added).

**RESPONSE: Denied for lack of information.**

84.   A website tracking service, "Wayback Machine," tracked and reports this blog as existing until sometime in early 2018.

**RESPONSE: Denied for lack of information.**

### h. Failure to Accommodate — Exclusive Use Parking

85.   A "flesh eating" form of MRSA in Wolf's wound on his left foot led to approximately two-months in hospitals beginning in September 2017, from which Wolf was strictly isolated, sedated, often psychotic and catatonic, and completely unable to respond in any meaningful way.

**RESPONSE: Denied for lack of information.**

86.   After multiple surgeries, and with a very delicate surgical skin graft, Wolf was released and returned home on the condition that he gain "less than 20 steps" access to his vehicle for needed treatment.

**RESPONSE: Denied for lack of information.**

87.    The doctor's order was required until at least early January of 2018.

**RESPONSE: Denied for lack of information.**

88.    The doctor's order resulted in an urgent, immediate request for parking accommodation on or about October 4, 2017 from the Association, with doctor notes and explanation.

**RESPONSE: Denied for lack of information.**

89.    Under Section IV of the Meadow Hills III registered declarations and covenants, the Association has the right to "assign" exclusive use parking to any unit owner:

**RESPONSE: Denied for lack of information.**

90.    Although finally "approved" by the Association approximately six weeks later, and after repeated requests through WLPP and Dupont to the Association with appeals to accommodate, there was no accommodation granted to Mr. Wolf until early January, more than two months later.

**RESPONSE: Denied for lack of information.**

91.    Thus, the Association's accommodation was not granted until the time accommodation was no longer necessary.

**RESPONSE: Denied for lack of information.**

92.    Such delay of approval appears to be an act of retaliatory bad faith by the Association and further proof of discriminatory animus toward the disabled and in particular toward Mr. Wolf.

**RESPONSE: Denied.**

93.    Wolf, on crutches and without a provided accommodation, was often required to park at

other end of the parking lot, and traverse across icy pavement on his crutches.

**RESPONSE: Denied for lack of information.**

94.     On one such occasion, Wolf fell on ice and injured the sensitive skin graft.

**RESPONSE: Denied for lack of information.**

95.     After efforts to save his foot over the next year, and because of the re-infection resulting, Wolf suffered permanent loss of his large toe (amputated January 2019) and major part of his foot (first metatarsal amputation June 2019).

**RESPONSE: Denied for lack of information.**

96.     Wolf must permanently use a special brace to facilitate mobility.

**RESPONSE: Denied for lack of information.**

97.     Wolf remains permanently disfigured and unable to walk normally.

**RESPONSE: Denied for lack of information.**

98.     Wolf could not fight the Associations foreclosure and attempt to evict him because of his disabilities, and his home was sold pursuant to stipulation and the Association recovered its "assessments" through the sale of the home.

**RESPONSE: Denied for lack of information.**

99.     Wolf should have been afforded the opportunity to pay off what was allegedly owed to the Association without facing a foreclosure action in the first instance—like all abled Association members had been afforded in the past by the Association.

**RESPONSE: Denied for lack of information.**

100.    Wolf now seeks to recover damages against the Association and the lawyers who aided and abetted the Association's unlawful discrimination and breach of fiduciary duties.

**RESPONSE: Denied.**

## RESPONSE TO FIRST CLAIM FOR RELIEF
Conspiracy to Interfere with Civil Rights
(Against all Defendants)

101.    Plaintiff repeats the allegations of all of the above paragraphs as if fully set forth herein.

**RESPONSE: These Defendants repeat and incorporate their responses to the preceding paragraphs.**

102.    42 U.S.C. § 1985(3), creates liability for conspiracy to interfere with a person's civil rights.

**RESPONSE:  These allegations purport to restate applicable law and do not require a response from these Defendants. To the extent that a response may be required, Defendants admit that this is the title of the statute; the remainder is denied for lack of information.**

103.    To state a cause of action, a Plaintiff must plead that two or more persons conspired with a discriminatory motive.

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied.**

104.    In particular, to state a claim, a plaintiff must show that the conspiracy was motivated by "some racial, or perhaps otherwise class-based . . . animus."

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from**

**these Defendants. To the extent, if any, that a response is required, these allegations are denied as incomplete.**

105.    The Association, Defendant Williams, and indeed all of the board members of the Association conspired with Stephane DuPont and WLPP to unlawfully discriminate against Plaintiff based on his disability.

**RESPONSE: Denied.**

106.    Defendants conspired together on how to proceed with Plaintiff regarding his disputed Association fees.

**RESPONSE: Denied.**

107.    Defendants' purpose in conspiring was to deprive Plaintiff of his equal protection and privileges under the laws of Colorado and the United States.

**RESPONSE: Denied.**

108.    This conspiracy was furthered by Defendants acts of foreclosing on Plaintiff home based on his protected status.

**RESPONSE: Denied.**

109.    This conspiracy was furthered by the fact that Defendants did not allow reasonable modifications or accommodations for Plaintiff to settle his Association dispute.

**RESPONSE: Denied.**

110.    Upon information and belief, the Association primarily based its decision to foreclose on Plaintiff's house based upon Mr Dupont's and WLPP's advice about how to proceed against disabled Association members.

**RESPONSE: Denied.**

111.    As a result of Defendants' actions, Plaintiff suffered injuries as he lost his home and right

to residency based on his disabilities and the facts listed heretofore.

**RESPONSE: Denied.**

## RESPONSE TO SECOND CLAIM FOR RELIEF
Violation of the Fair Housing Act
(Against All Defendants)

112.    Plaintiff incorporates by reference the allegations set forth above.

**RESPONSE: These Defendants repeat and incorporate their responses to the preceding**

**paragraphs.**

113.    In 1988, Congress dramatically expanded the scope and coverage of the Fair Housing Act.

Entitled the Fair Housing Amendments Act of 1988 ("FHAA"), the new law included

prohibitions against discrimination on the basis of handicap in the provision of housing.

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader**

**is entitled to relief, but is rather a generality about the law that requires no response from**

**these Defendants. To the extent, if any, that a response is required, these allegations are**

**denied for lack of information.**

114.    The Fair Housing Act protects people from discrimination when they are renting or buying

a home, getting a mortgage, seeking housing assistance, or engaging in other housing-

related activities.

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader**

**is entitled to relief, but is rather a generality about the law that requires no response from**

**these Defendants. To the extent, if any, that a response is required, these allegations are**

**denied for lack of information.**

115.   The Act specifically expanded the definition of "discrimination" to impose an affirmative obligation on property holders, including associations, to grant residents' requests to make accommodations and modifications at the residents' expense that are reasonable and necessary to ensure their equal opportunity to use and enjoy a dwelling.

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

116.   Congress passed the FHAA specifically to eliminate accessibility barriers that historically have operated to deny fair housing to disabled persons and isolate them from the community at large.

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

117.   By enacting these amendments, Congress made "a clear pronouncement of a national commitment to end the unnecessary exclusion of persons with handicaps from the American mainstream." (June 17, 1988).

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

118.  Congress recognized that the overt refusal to rent or sell housing was only one of the many reasons disabled people could not find necessary housing; the denial of reasonable modifications and accommodations poses just as significant an obstacle.

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

119.  Since the enactment of the 1988 amendments to the Fair Housing Act, scores of courts across the country have held that landlords, homeowners' associations, housing developers, and condominium associations violate the Fair Housing Act when they Denied reasonable accommodations and/or reasonable modifications for persons with disabilities.

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

120.  The Fair Housing Act also prohibits the harassment of person because of race, color, religion, sex, *disability,* familial status, or national origin.

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

121.  The Fair Housing Act prohibits threating, coercing, intimidating, or interfering with

anyone exercising a fair housing right or assisting others who exercise that right.

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

122.    The Fair Housing Act also requires Housing providers to make reasonable accommodations and allow reasonable modifications that may be necessary to allow persons with disabilities to enjoy their housing.

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

123.    A "reasonable accommodation" is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces.

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

124.    The Act makes it unlawful to refuse to make reasonable accommodations to rules, policies, practices, or services when such accommodations may be necessary to afford

persons with disabilities an equal opportunity to use and enjoy a dwelling.

**RESPONSE: This is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

125.    The practices of the Defendants described above constitute:

     a.   pattern or practice of resistance to the full enjoyment of rights granted by the **Fair Housing Act,** pursuant to 42 U.S.C.A. 3614(a); and

     b.   A denial to a group of persons of rights granted by the **Fair Housing Act,** which denial raises an issue of general public importance, pursuant to 42 U.S.C.A. 3614(a).

**RESPONSE: Denied.**

126.    Wolf, who has been the victim of the Defendants' discriminatory housing practices is an aggrieved person as defined in 42 U.S.C.A. & 3602(i), and has suffered damages as a result of the Defendants' conduct described above.

**RESPONSE: Denied**

127.    The Defendants conduct described above was intentional, willful, and/or taken in disregard for the rights of others.

**RESPONSE: Denied.**

128.    Moreover, with respect to the foreclosure, Defendants did not explore or offer any alternate avenues for Plaintiff to pay his HOA dues.

**RESPONSE: Denied.**

129.    Defendants turned down several alternative proposals and offers to enter payment plans or settlement offers.

**RESPONSE: Denied.**

130.    Upon information and belief, other abled owners were given alternatives to pay lien assessments without foreclosure.

**RESPONSE: Denied for lack of information.**

131.    Yet, Plaintiff was not afforded with this opportunity to resolve his matter as to avoid foreclosure.

**RESPONSE: Denied for lack of information.**

132.    The foregoing actions of Defendants constitute a refusal to permit, at the expense of the Defendants, reasonable modifications of existing premises occupied or to be occupied by plaintiffs when such modifications may be necessary to afford such person full enjoyment of the premises, in violation of 42 U.S.C. §§ 3604(0(2), 3604(0(3)(A).

**RESPONSE: Denied.**

133.    The foregoing actions of defendants constitute a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. §§ 3604(0(2), 3604(f)(3)(B).

**RESPONSE: Denied.**

134.    As a result of Defendants' violations of the Fair Housing Act, Plaintiff has been injured, as detailed above.

**RESPONSE: Denied.**

<u>**RESPONSE TO THIRD CLAIM FOR RELIEF**</u>
Violation of Civil Rights - Failure to Reasonably Accommodate
(Against the Association)

135.     Plaintiff incorporates by reference the allegations set forth above.

**RESPONSE: These Defendants repeat and incorporate their responses to the preceding**

**paragraphs.**

136.     As noted, the Fair Housing Act Amendment (FHAA), when including disabled people as

        a protected class, also requires Housing providers to make reasonable accommodations

        and allow reasonable modifications that may be necessary to allow persons with

        disabilities to enjoy their housing. 42 USC § 3604(f)(3)(B).

**RESPONSE: This is not directed to these Defendants and is not a short and plain statement**

**of the claim showing that the pleader is entitled to relief, but is rather a generality about the**

**law that requires no response from these Defendants. To the extent, if any, that a response is**

**required, these allegations are denied for lack of information.**

137.     137. HUD adopted rules 24 CFR § 100.204:

      (a)     It shall be unlawful for any person to refuse to make reasonable accommodations
            in rules, policies, practices, or services, when such accommodations may be
            necessary to afford a handicapped person equal opportunity to use and enjoy a
            dwelling unit, including public and common use areas.

**RESPONSE: This is not directed to these Defendants and is not a short and plain statement**

**of the claim showing that the pleader is entitled to relief, but is rather a generality about the**

**law that requires no response from these Defendants. To the extent, if any, that a response is**

**required, these allegations are denied for lack of information.**

138.     This rule actually states an example of a violation, illustrating the same facts presented in

        these allegations:

        "Example (2):
        Progress Gardens is a 300 unit apartment complex with 450 parking spaces which are

available to tenants and guests of Progress Gardens on a first come first served basis. John applies for housing in Progress Gardens. John is mobility impaired and is unable to walk more than a short distance and therefore requests that a parking space near his unit be reserved for him so he will not have to walk very far to get to his apartment. It is a violation of § 100.204 for the owner or manager of Progress Gardens to refuse to make this accommodation. Without a reserved space, John might be unable to live in Progress Gardens at all or, when he has to park in a space far from his unit, might have great difficulty getting from his car to his apartment unit. The accommodation therefore is necessary to afford John an equal opportunity to use and enjoy a dwelling. The accommodation is reasonable because it is feasible and practical under the circumstances."

**RESPONSE: This is not directed to these Defendants and is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

139.   A "reasonable accommodation" is a change, exception, or adjustment to a rule, policy, practice, or service that may be necessary for a person with a disability to have an equal opportunity to use and enjoy a dwelling, including public and common use spaces.

**RESPONSE: These claims and contentions are not directed to these Defendants. To the extent a response may be required, they are denied for lack of information.**

140.   The Act makes it unlawful to refuse to make reasonable accommodations to rules, policies, practices, or services when such accommodations may be necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling.

**RESPONSE: This is not directed to these Defendants and is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response**

**is required, these allegations are denied for lack of information.**

141.    Wolf had a reasonable, urgent need for an exclusive use parking space to allow him to get to medical treatment

**RESPONSE: This is not directed to these Defendants. To the extent that a response may be required, denied for lack of information.**

142.    The Association had the power and duty (and ability) to grant the request in a very short time.

**RESPONSE: This is not directed to these Defendants. To the extent that a response may be required, denied for lack of information.**

143.    That request was made between November 2017 through January 2018

**RESPONSE: This is not directed to these Defendants. To the extent that a response may be required, denied for lack of information.**

144.    The request was only granted two months later, about the time it was no longer needed

**RESPONSE: This is not directed to these Defendants. To the extent that a response may be required, denied for lack of information.**

145.    The accommodation, a simple parking sign that would take a few hours to purchase and post, was unreasonably denied during the period it was needed as Wolf was unable to safely access his vehicle for medical care as outlined in the request.

**RESPONSE:  This is not directed to these Defendants. To the extent that a response may be required, denied affirmatively or for lack of information.**

146.    Wolf was injured as a result of the Associations' delay in issuing Wolf's requested accommodation.

**RESPONSE: This is not directed to these Defendants. To the extent that a response may be required, denied.**

147.    The Association had motive and intent to cause harm and retaliate against Wolf when he asserted his civil rights.

**RESPONSE: This is not directed to these Defendants. To the extent that a response may be required, denied.**

148.    With that motive, the Association denied accommodation for over two months when it was desperately needed.

**RESPONSE: This is not directed to these Defendants. To the extent that a response may be required, denied.**

149.    Wolf suffered loss and injury.

**RESPONSE: This is not directed to these Defendants. To the extent that a response may be required, denied for lack of information.**

<u>RESPONSE TO FOURTH CLAIM FOR RELIEF</u>
Breach of Fiduciary Duty
(Against the Association and Carol Williams)

150.    Plaintiff incorporates by reference the allegations set forth above.

**RESPONSE: These Defendants repeat and incorporate their responses to the preceding paragraphs.**

151.    In the context of cooperatives and condominiums, shareholders and unit owners invest their trust in board members by casting proxies and ballots in their favor at the annual meeting.

**RESPONSE: This is not directed to these Defendants and is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

152.    Recognizing that a corporation's board members serve in a position of trust, every state's corporation law imposes a fiduciary duty on the corporation's board of directors, requiring them to act in the best interest of the corporation and its constituents.

**RESPONSE: This is not directed to these Defendants and is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

153.    As a result of this, duly elected board members have the power to enact and enforce house rules which profoundly impact residents' daily lives.

**RESPONSE: This is not directed to these Defendants and is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

154.    This duty requires fair and equal treatment of all shareholders or unit owners.

**RESPONSE: This is not directed to these Defendants and is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is**

**required, these allegations are denied for lack of information.**

155.    Abuses of power violate the fairness aspect of the obligation.

**RESPONSE: This is not directed to these Defendants and is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

156.    As a director of the Association who signed the foreclosure resolution, Carol Williams and the Association owed a fiduciary duty to act in the best interests of the Association and its constitutes, including Plaintiff

**RESPONSE: This is not directed to these Defendants and is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, the allegations are denied.**

157.    The Association and Carol Williams violated their fiduciary duty to the Association and its members, including Plaintiff, when they choose to foreclose on Plaintiff's property based solely on his disability.

**RESPONSE: This is not directed to these Defendants. To the extent that a response may be required, denied.**

158.    The Association and Carol Williams violated their fiduciary duty to the Company and its constituents, including Plaintiff, when they choose not to modify or accommodate Plaintiff in his attempts to pay off the HOA fees.

**RESPONSE: This is not directed to these Defendants. To the extent that a response may be required, denied.**

159.    The fiduciary duties owed by the Association and Williams include but are not limited to treating Mr. Wolf impartially and with the utmost good faith, acting reasonably and not out of self-interest but rather in the best interest of the Association and its members.

**RESPONSE: This is not directed to these Defendants, and is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied.**

160.    Utmost good faith under the law is a more stringent and demanding standard that that of good faith.

**RESPONSE: This is not directed to these Defendants, and is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these allegations are denied for lack of information.**

161.    The Association and Carol Williams violated their fiduciary duty to the Association and its members by failing to provide Plaintiff with total lien assessment, pursuant to their own policies and covenants when requested by Plaintiff.

**RESPONSE: This is not directed to these Defendants. To the extent a response may be required these allegations are denied.**

162.    The Association and Carol Williams, upon information and belief, had a personal vendetta

against Plaintiff because of his disability.

**RESPONSE: This is not directed to these Defendants. To the extent a response may be required these allegations are denied.**

163.    Manifestation of favoritism towards selected shareholders or unit owners, to the detriment of others, constitutes a breach of the fiduciary obligation in the sense that it violates the equality aspect of a board member's duty of utmost good faith towards his shareholders or unit owners.

**RESPONSE: This is not directed to these Defendants and is not a short and plain statement of the claim showing that the pleader is entitled to relief, but is rather a generality about the law that requires no response from these Defendants. To the extent, if any, that a response is required, these defendants Denied for lack of information.**

164.    As a direct and proximate result of the Association's and Carol Williams' breach of their fiduciary obligations to the Association and its members, Plaintiff has been damaged in an amount to be determined at trial.

**RESPONSE: This is not directed to these Defendants. To the extent a response may be required these allegations are denied.**

165.    As a result of Defendants' actions, Plaintiff suffered damages and injury.

**RESPONSE: Denied.**

### RESPONSE TO FIFTH CLAIM FOR RELIEF
Breach of the Statutory Obligation of Good Faith
(Against the Association and Carol Williams)

166.    Plaintiff incorporates by reference the allegations set forth above.

**RESPONSE: These Defendants repeat and incorporate their responses to the preceding**

**paragraphs.**

167. Every contract or duty governed by Colorado common interest law imposes a statutory

    obligation of good faith in its performance or enforcement.

**RESPONSE: This allegation is not directed to these Defendants and so no response is required. To the extent a response may be required: Denied.**

168. The Association's governing documents refer to and adopt such statutory obligations.

**RESPONSE: This allegation is not directed to these Defendants and so no response is required. To the extent a response may be required: Denied.**

169. The Association and Williams violated such obligations on multiple occasions as set forth

    above.

**RESPONSE: This allegation is not directed to these Defendants and so no response is required. To the extent a response may be required: Denied.**

170. The Association caused Mr. Wolf damages in violating the statutory obligation of good

    faith.

**RESPONSE: This allegation is not directed to these Defendants and so no response is required. To the extent a response may be required: Denied.**

<u>RESPONSE TO SIXTH CLAIM FOR RELIEF</u>
Breach of the Implied Covenant of Good Faith and Fair Dealing
(Against the Association and Carol Williams)

171. Plaintiff incorporates by reference the allegations set forth above

**RESPONSE: These Defendants repeat and incorporate their responses to the preceding**

**paragraphs.**

172.   The covenant of good faith and fair dealing is implied in every contract and requires

good faith in the discretionary performance of contractual obligations.

**RESPONSE: This allegation is not directed to these Defendants and so no response is**

**required. To the extent a response may be required: these Defendants deny for a lack of**

**information as this paragraph does not speak to the contract, type of contract, or other**

**agreement which is the subject of the contention. As such, it is denied for a lack of**

**information.**

173.   The Association's declaration is deemed to be a contract.

**RESPONSE: This allegation is not directed to these Defendants and so no response is**

**required. To the extent a response may be required: Denied as an inaccurate recitation of**

**Colorado law, which law speaks for itself.**

174.   As set forth above, The Association and Williams acted in bad faith in their discretionary

performance of contractual obligations on multiple occasions.

**RESPONSE: This allegation is not directed to these Defendants and so no response is**

**required. To the extent a response may be required: Denied.**

175.   The Association's bad faith caused damages to Mr. Wolf.

**RESPONSE: This allegation is not directed to these Defendants and so no response is**

**required. To the extent a response may be required: Denied.**

## RESPONSE TO SEVENTH CLAIM FOR RELIEF
Aiding and Abetting Breach of Fiduciary Duty
(Against Dupont and WLPP)

176.   Plaintiff incorporates by reference the allegations set forth above.

**RESPONSE: These Defendants repeat and incorporate their responses to the preceding paragraphs.**

177.    As alleged above, the Association and Williams owed fiduciary duties to the Association and its members.

**RESPONSE: Denied.**

178.    Both WLPP and Dupont knew of those fiduciary duties.

**RESPONSE: Denied.**

179.    Both WLPP and Dupont substantially assisted the breaches of fiduciary duty by advising the Association and Williams to treat disabled persons differently than other members when seeking to collect assessments.

**RESPONSE: Denied.**

180.    As a direct and proximate result of the breaches of fiduciary duty by the Association and Williams, aided and abetted by WLPP and Dupont, Wolf was damaged in an amount to be proven at trial.

**RESPONSE: Denied.**

**DEFENSES**

1.      Defendants deny all allegations not expressly admitted.

2.      Defendants deny negligence, causation, and damages.

3.      Plaintiffs' complaint fails to state a claim upon which relief may be granted.

4.      Plaintiff's claims are barred by the doctrine of accord and satisfaction.

5.      Plaintiff's claims are barred by the doctrine of estoppel.

6.      Plaintiff has released some or all of the claims asserted in this complaint.

7.      Plaintiff's claims are barred by the doctrine of laches.

8.      Plaintiff has released some or all of the claims set forth in this complaint.

9.      Plaintiff's claims are barred by the applicable statute of limitations.

10.     Plaintiff's claims are barred by the doctrine of waiver.

11.     Plaintiff has failed to exhaust all mandatory administrative remedies prior to initiating this action. As such there is no standing nor jurisdiction to hear these claims.

12.     Plaintiff is not or may not be the owner of the claims asserted here due to his bankruptcy. As such the claims should be dismissed both for a lack of standing, and a failure to state a claim, but also for a failure to join necessary and indispensable parties.

13.     Plaintiff's claims are barred by the litigation privilege.


        WHEREFORE, Defendants Winzenburg, Leff, Purvis & Payne LLP and Stephane Dupont respectfully request that the Court dismiss the claims against them, enter judgment in their favor and against Plaintiff, and award them their attorneys' fees and costs, including reasonable expert witness fees, and such other and further relief as the Court may consider appropriate.

        DEFENDANTS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.

DATED:        September 16, 2020.


                                        *s/ Ronald H. Nemirow*
                                        _____
                                        Ronald H. Nemirow
                                        NEMIROW PEREZ P.C.
                                        *Attorney for Defendants Stephane Dupont*
                                        *and Winzenburg, Leff, Purvis & Payne LLP*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 16, 2020, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system and notification of such filing was also electronically served to the following email addresses:

Robinson & Henry P.C.

Robert R. Harper

Mason Simpson

900 Castleton Road, Suite 200

Castle Rock, CO 80109

*s/ Ronald H. Nemirow*
_____

Ronald H. Nemirow