IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01524-RBJ

RICHARD WOLF,

    Plaintiff,

v.

MEADOW HILLS III CONDOMINIUM ASSOCIATION, CAROL WILLAMS, STEPHANE DUPONT and WINZENBURG, LEFF, PURVIS & PAYNE, LLP ,

    Defendants.

---

### PLAINTIFF'S COMBINED RESPONSE TO DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

---

THE PLAINTIFF, Richard Wolf, by and through his attorneys and pursuant to Fed.R.Civ.P. 12 and D.C.COLO.LCivR 7.1, responds to the Motions for Judgment on the Pleadings filed by the Defendants. In opposition to the Motions, Plaintiff states:

## BACKGROUND

The claims in this case originate from $5,700 in water damage to Mr. Wolf's condominium that should have been paid by the HOA's insurance policy in 2015. The HOA refused to submit a claim for the damages to the insurance. Mr. Wolf withheld $5,700 from his payments for monthly assessments, and the HOA initiated a suit for money damages to recover the past due assessments. However, when Mr. Wolf tried to pay the past due amounts, the Attorney Defendants instructed the Board of the HOA to not accept the payments, so that the Attorneys could pursue the litigation to recover their attorneys' fees. In 2016, Defendant DuPont advised

1

the Board to drop the county court case and instead to seek foreclosure, solely because Mr. Wolf's source of income is disability payments that are not subject to garnishment. Amended Complaint, ¶¶ 1 through 66; . Mr. Wolf did not learn of the reasons for the change in tactics until 2019, because the Attorney Defendants instructed the HOA to ignore Mr. Wolf's requests pursuant to C.R.S. §38-33.3-317 for the records of the HOA that revealed this background. Amended Complaint, ¶ 53.

In 2016, Mr. Wolf filed for bankruptcy to stop the foreclosure. During the bankruptcy proceedings, the parties reached a stipulation, which the Defendants breached. A second stipulation, replacing the first, was reached in March 2018. The Second Stipulation incorporated a general release dated June 2017. The second stipulation included a provision requiring Mr. Wolf to sell his home and pay the agreed upon settlement amount to the HOA from the proceeds of the sale. This provision of the Stipulation was invalid, because CCIOA provides the remedies available to an HOA, and requiring an owner to sell is not an available remedy. The freedom to contract is limited by CCIOA, because CCIOA expressly states that the rights and obligations set forth in the statute may not be altered by agreement. C.R.S. §38-33.3-104. The Stipulation also established the amount of the Associations' lien (including attorneys' fees) through the sale of the condominium as $11,000.

Mr. Wolf did not sell his condominium within the specified time period, and the Association did not reduce or limit the amount of its lien asserted against the property, as required by the stipulation. Rather, the Defendant Attorneys continued to run up attorneys' fees in the course of litigation, and instructed the HOA to add all of the fees and costs to the claimed lien amount, even though no court had awarded fees to the HOA as required under CCIOA, C.R.S. §38-33.3-123. Eventually, the attorney's fees had multiplied what started as a $5,700 claim to more than

$36,308.  *See Exhibit A*—Disbursement Statement from sale of the subject property. The HOA collected 3.5 times the amount it had agreed to in the stipulation.  The attorneys' fees skyrocketed to six times the principal amount—virtually all of which was incurred after Mr. Wolf tried three times to pay the $5,700.  Amended Complaint, ¶¶ 43 to 45.

In June 2018, the Attorney Defendants—through their employee Wendy Weigler—reopened the foreclosure action and filed an Amended Complaint for foreclosure in the previously-stayed District Court case.  Amended Complaint, ¶¶ 67 to 73.   In response to Mr. Wolf's motion to dismiss the amended complaint, Ms. Weigler represented to the court that the Stipulations had been rescinded and were void.  *Exhibit B*—Response to Motion to Dismiss filed on September 27, 2018, at p. 2 (bates-labeled WLPP 000209) (Deposition Exhibit 6).

**LEGAL STANDARD**

Rule 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The pleadings close after the following documents are filed: a complaint, an answer to the complaint, any counterclaims and answers, third-party complaints and answers, and any reply to an answer, if ordered by the court.  Motions for judgment on the pleadings are governed by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). The court's review of such motions is strictly limited to the contents of the parties' pleadings and any documents attached thereto.

**ARGUMENT**

**I.      DEFENDANTS' MOTIONS ARE UNTIMELY**

This action was filed on May 28, 2020 [ECF #1]. The Amended Complaint was filed on July 29, 2020 [ECF # 9]. Defendants agreed to the terms of the Proposed Scheduling Order, filed March 25, 2021 [ECF #36] and the deadlines set forth therein, which include the discovery cutoff set for August 15, 2021. Although Defendants mention the defenses raised in the instant Motion in their statements of their cases within the proposed scheduling order. On April 14, 2021, after the parties conferred to agree upon the dates, the Court entered its Order setting trial commencing May 9, 2022, and the trial preparation conference on April 14, 2022. [ECF #38]. Yet, Defendants did not commence the formal conferral process to file the Motions until April 30, 2021, a full eleven months after this case was filed.

Defendants filed their Motions on June 23, 2021—six months after undersigned entered an appearance in this case, thirteen months after the case was filed, three months after the scheduling order entered, and less than eight weeks before the agreed-upon discovery cutoff. When Plaintiff sought to schedule depositions of the Defendants, they moved the court for a stay of discovery. In their request for the stay, however, Defendants' counsel failed to inform the court that they had cast aside the stipulations upon which they now rely in order for the attorneys to recover for themselves $21,000 more than the purported settlement amount. Defendants have offered no explanation for their inconsistent positions, which they unapologetically reverse to put forward the argument that offers the biggest gain for the attorneys involved at the time.

Rule 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Defendants do not assert that their motions were filed "early enough not to delay trial," nor can they. Although this case was filed more than 15 months ago, no discovery has been obtained. The deadline for dispositive motions is August 30, 2021—but the instant motions are not filed pursuant to Fed.R.Civ.P. 56. Presumably, those motions are just around the corner.

At this point, the timing of the Motions and the stay of discovery almost guarantee that trial will be delayed. Defendants offer no explanation for their extreme delays in filing a Motion under Rule 12 before they Answered the Amended Complaint, or at any time before submitting the scheduling order and agreeing to trial dates. The date of filing and less-than-forthcoming arguments contained in the Motions suggest that they were interposed primarily as a delay tactic.

Consequently, the Court may deny the Motions as untimely filed, without adversely impacting the substance of the Defendants' defenses in this case. Fed.R.Civ.P. 12(c).

**II.     THE PURPORTED STIPULATIONS AND RELEASES WERE RESCINDED AND ARE VOID.**

It is rather surprising that none of the four attorneys representing the Defendants mentioned that they previously represented to the court that the stipulations were void. Similarly, it is perhaps curious that they seek to enforce the waiver against Mr. Wolf here, but fail to mention that they did not honor their agreement to settle for $11,000. In June 2018—just a few months after the March 2018 stipulation was signed—the

Defendants went back to the District Court to restart the foreclosure action. They argued that any agreement or settlement or stipulation to resolve the dispute was void and not in effect. Pursuant to the Court's Order, on July 28, 2021, Plaintiff's counsel deposed Attorney Wendy Weigler—the attorney who signed this filing with the District Court asserting that no settlement or stipulation existed. Ms. Weigler is a Colorado HOA lawyer with approximately 23 years of experience in the field at the time. Yet, under the apparent instructions of Mr. Nemirow (counsel for the Attorney Defendants), Ms. Weigler testified that she "mixed up" the concept of breach of contract and rescission of contract in that filing, and rather meant that the stipulation had been breached. *Exhibit C, Transcript of Deposition of Wendy Weigler, July 28, 2021* ("Tr. Weigler"), 58:3 to 60:3; 61:10 to 23.

Even if the court finds Ms. Weigler's testimony to be credible, it does not explain why the Defendants restarted a foreclosure action and claimed $36,000 of the proceeds of the sale, instead of suing to enforce the agreement and honoring their own agreement to settle for $11,000. No matter how one tries to explain the Attorney Defendants conduct against Mr. Wolf, it simply is inconsistent with well-established principles of contract law. Ms. Weigler seems erroneously believe that a breach of contract by one party permits the other party to act as if no agreement ever existed and still call it a breach. At the same time, the Defendants in this case and their current counsel seem to believe that there is nothing wrong with asserting in one case that no binding agreement exists (when this position supports the enforcement of a lien for three times the contracted settlement amount) and later assert that a binding agreement does exist (when it supports their attempt to escape liability for their prior bad acts).

6

Instead, Defendants ran up thousands of dollars in attorneys' fees after March 2018, to foreclose on the property, which forced Mr. Wolf to sell at a discount so he could avoid foreclosure. The Disbursement Statement from the September 19, 2019, closing shows that the Defendants took $36,308.00 from the sale proceeds—almost half the amount Mr. Wolf received.

In addition, Defendants did not act in good faith in any part of their dealings with Mr. Wolf. The Defendant Attorneys knew or should have known that CCIOA did not permit them or the HOA to require Mr. Wolf to sell his home as a condition of a settlement in the first instance. CCIOA does not allow an HOA to force an owner to sell his property as a method of collection. The HOA's sole remedies were foreclosure and a money judgment, provided certain conditions were met, as set forth in Section 316 of CCIOA, C.R.S. §38-33.3-316.

### III.  PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED

#### A. Conspiracy

Both Meadow Hills and WLPP argue Wolf's conspiracy claim is barred by the applicable statute of limitations. Defendants' claims are underdeveloped on this point. They simply assert the statute of limitations is two years and that the triggering event (the Association's decision to foreclose) occurred in November of 2016. This argument is insufficient from which judgment on the pleadings may be granted – particularly because there is no discussion of accrual.

Wolf raises his conspiracy claim under 42 U.S.C. § 1985(3), which includes no express statute of limitations. So, the statute of limitations is two years. See Colo. Rev. Stat. § 13-80-102(1)(g):

7

> The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, must be commenced within two years after the cause of action accrues, and not thereafter . . . All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute[.]

Wolf's complaint was filed on May 28, 2020, meaning the earliest actionable date is May 28, 2018. The conspiracy claim is based the defendants' decision to foreclose rather than seeking monetary damages due to Wolf's status as disabled. So, this cause of action would have needed to "accrue" on or after May 28, 2018. As defendants make no argument on accrual, any argument they make in their reply should be deemed as waived. See, e.g., United States v. Harrell, 642 F.3d 907, 918 (10th Cir. 2011) (explaining, "arguments raised for the first time in a reply brief are generally deemed waived.").

Accrual of a Section 1985 claim is governed by federal law. See Morse v. Univ. of Vermont, 973 F.2d 122, 125 (2d Cir. 1992). Under federal law, the statute of limitations for claims brought under § 1985 "begins to run once the plaintiff knows of the injury on which the claim is based." Jaghory v. New York State Dept. of Educ., 131 F.3d 326, 1997 WL 765607 (2nd Cir. 1997). Wolf is within the statute of limitations on his conspiracy claims as long as they accrued on or after May 28, 2018.

Here, the conspiracy claim did not accrue until the Association satisfied Wolf's CCIOA requests. Without this information, Wolf could not have known the decision to foreclose was based on his disability. As Wolf argued in the complaint, "WLPP's billing records provided during a statutory records request in or around April 2019, revealed that a WLPP attorney . . . began advising the Association on foreclosure options, only

after discovery of Plaintiff Wolf's disability protected stats on or about June 29, 2016." So, the conspiracy claims accrued in April of 2019 and are not time barred.

Defendants' argument to the contrary is easily disposed of. They argue the claim is time barred because the statute of limitations began to run in November of 2016, when Meadow Hills decided to file the foreclosure. But they neither allege nor establish Wolf was aware of either the decision to foreclose or the discriminatory reason underlying this decision.

Judgment on the pleadings in favor of defendants is inappropriate on this claim, because the claim is cognizable under Colorado and Federal law, and did not accrue until April 2019.

### B.  Violation of FHA

Defendants argue Wolf's FHA claims based on the foreclosure and parking accommodation are barred by the statute of limitations. This claim is under 42 U.S.C. § 3613(a)(1)(A), which provides claims under the FHA must be brought within two years of the alleged discriminatory practice.  More specifically, this section provides:

> An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

Because the statute of limitations is again two years, the last actionable date is May 28, 2018. With tolling for the Housing complaint, this date becomes May 6, 2018. As to the failure to accommodate (exclusive use parking), Wolf argues he requested parking accommodation on October 4, 2017, and the Association granted his request

9

two months later (approximately December 4, 2017), when the accommodation was no longer necessary.

This claim is saved by the doctrine of equitable tolling, which exists where a litigant establishes: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Lawrence v. Florida, 549 U.S. 327, 336 (2007). As to the first element, Wolf has been diligently pursuing his rights concerning the parking accommodation via raising his claims in various forums. He tried to pay the claimed indebtedness three times. He pressed the Board to not only grant his request for a designated parking space, but to implement the approval and assign the space. Had the Board timely acted, Mr. Wolf would have avoided the icy parking lot, the foreseeable fall, and the serious physical injuries that followed. He filed a complaint of discrimination with the Colorado Civil Rights Division (CCRD) and sought multiple resolutions with the HOA, despite his ailing health, disabilities, and extended debilitating hospital stays. Mr. Wolf asked the HOA to provide the documents it is required to disclose by law—multiple times. That these requests were ignored until new counsel came on the scene demonstrates the misconduct by the Attorney Defendants and their indispensable role in pawning off the HOA and Mr. Wolf to serve their own selfish interests. This element is satisfied.

The second element is satisfied, too, because the Association's failure to timely respond to CCIOA requests, which is effectively beyond Wolf's control, is what precluded him from filing this action much earlier. See, e.g., Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 390 (1st Cir. 2014) (quotations omitted). Here, Mr. Wolf requested documents and information from the HOA pursuant to C.R.S. §38-33.3-317

several times between 2016 and 2019, but the Defendants refused to provide the information—timely or otherwise.  It was not until 2019—after the Attorney Defendants had withdrawn from the representation of the HOA and new counsel was retained—that the HOA finally provided the requested documents and information to Mr. Wolf.  Contained in those documents were the discussions of the Board and other information giving rise to Mr. Wolf's claims in this case.  Similarly, Mr. Wolf diligently followed up on his request for the parking accommodation during the six winter months between the board's approval of the request and the implementation of the request.  It was during this lapse that Mr. Wolf fell on the ice his request sought to avoid.  This fall caused Mr. Wolf serious injuries and he was hospitalized for a period of time.  Because Defendants flagrant disregard for the law interfered with Mr. Wolf's discovery of the extent of his legal claims, they must not be permitted to claim that these claims are therefore time-barred.   Wolf could not have possibly been aware of the discriminatory motive for the untimely processing of his request without the CCIOA responses, which were not provided to Wolf until 2019, a date within the statute of limitations for this claim.

Judgment on the pleadings in favor of defendants is therefore inappropriate on this claim.

### IV. ATTORNEYS MAY BE LIABLE FOR CONSPIRING WITH THEIR CLIENTS TO VIOLATE THE LAW

The WLPP defendants argue Wolf's claims for conspiracy to interfere with civil rights and discrimination in violation of the FHA against the WLPP must fail because "lawyers do not conspire with their clients or violate the FHA simply by representing their clients."  As with the statute of limitations arguments, this argument is

underdeveloped and should not be successful in a motion for judgment on the pleadings. Within this argument, WLPP cites Astarte, Inc. v. Pacific Indus. Sys., Inc., 865 F. Supp. 693, 708 (D. Colo. 1994), which provides:

> An attorney, being an agent of his principal, cannot be held liable for conspiracy with his principal where the agent acts within the scope of his authority and do not rise to the level of active participation in a fraud. See, e.g., Worldwide Marine Trading Corp. v. Marine Transport Service, Inc., 527 F.Supp. 581, 586 (E.D.Pa.1981); Fraidin v. Weitzman, 93 Md.App. 168, 611 A.2d 1046, 1079 (1992).

This does not mean an attorney cannot be held liable for conspiracy with a client, only that there is no liability where the attorney acts within the scope of his authority and does not actively participate in fraud. Support for the position that an attorney may be held liable for conspiracy may be found in dicta from Anstine v. Alexander, 128 P.3d 249, 256 (Colo. App. 2005) (explaining, "the law does not insulate aiders and abettors from liability simply because they acted in the course of fulfilling separate and distinct duties as lawyers"), rev'd on other grounds, Alexander v. Anstine, 152 P.3d 497, 503 (Colo.2007) (stating, "We save for another day the question of whether an attorney can ever be liable for aiding and abetting a breach of fiduciary duty to a non-client.")

Courts that have addressed this issue have generally held an attorney acting within the scope of his employment cannot conspire with his client unless the attorney acts for their sole personal benefit. Semler v. Hellerstein, 2016 COA 143, ¶ 32 (affirming dismissal of civil conspiracy claim because the plaintiff failed to allege the defendant lawyer "acted for his own personal gain or otherwise acted outside the scope of his legal representation"), cert. granted on other grounds, March 20, 2017. In Selmer, however, the Colorado Supreme Court recognized additional bases for a viable civil conspiracy claim, such as when an attorney engages in fraud or breaches an independent duty to a

12

third person. Id. at ¶ 32; citing Moore v. Weinberg, 644 S.E.2d 740, 750 (S.C. Ct. App. 2007) ("An attorney may be held liable for conspiracy where, in addition to representing his client, he breaches some independent duty to a third person.") (citation omitted), aff'd, 681 S.E.2d 875 (S.C. 2009).

Similarly, Mr. Wolf's claims do not risk "driving a wedge between counsel and their clients because the Attorney Defendants ended their representation of the HOA in November 2018, more than six months before this action was filed. Amended Complaint, ¶

Here, however, the attorneys breached an independent duty to Wolf not to violate his constitutional rights, and to treat pro se parties honestly, fairly, and with respect. The Attorney Defendants placed themselves in the shoes of the HOA by controlling all communications between Wolf and the HOA. The HOA board members should not have blindly followed the Attorney Defendants, but they did. The Attorney Defendants ran up attorneys' fees beyond any semblance of proportionality, solely for their own selfish gains . Therefore, the Attorney Defendants may be held liable for conspiracy and Mr. Wolf's claims are timely brought. Judgment on the pleadings in favor of defendants is inappropriate on this claim, and their request should be denied.

    **V.**    **PLAINTIFF'S CLAIMS FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING ARE COGNIZABLE**

Contrary to Defendants' assertions, Mr. Wolf has alleged a breach of the HOA Declarations, which provide the foundation for his claims for the breach of the duty of good faith and fair dealing. Amended Complaint, ¶ 64. Moreover, CCIOA establishes an independent duty upon the HOA in all dealings with Owners such as Mr. Wolf. The Amended Complaint cites numerous examples of bad faith by the Defendants, including

selectively seeking to enforce and avoid the stipulations, dismissing the case for money damages to initiate a foreclosure action, failing to timely implement the request for an assigned parking spot, and refusing to accept Mr. Wolf's payments of the underlying $5,700.  See, generally, Amended Complaint.

### VI. PLAINTIFF'S CLAIMS FOR FIDUCIARY DUTY ARE COGNIZABLE

Defendants incorrectly assert that CCIOA protects members of the board of the HOA from fiduciary liability and preempts C.R.S. §7-128-401.  These assertions are unsupported by the statutory provisions Defendants cite.

In this case, Mr. Wolf alleges that the HOA Defendants breached their fiduciary duties.  Contrary to Defendant's assertions, C.R.S. §38-33.3-303(2) provides:

> (2)  Except as otherwise provided in subsection (2.5) of this section:
>
> (a)  If appointed by the declarant, in the performance of their duties, the officers and members of the executive board are required to exercise the care required of fiduciaries of the unit owners.
>
> …..
>
> (2.5)  With regard to the investment of reserve funds of the association, the officers and members of the executive board shall be subject to the standards set forth in section 7-128-401, C.R.S .; except that, as used in that section:
>
> (a)  "Corporation" or "nonprofit corporation" means the association.
>
> (b)  "Director" means a member of the association's executive board.
>
> (c)  "Officer" means any person designated as an officer of the association and any person to whom the executive board delegates responsibilities under this article, including, without limitation, a managing agent, attorney, or accountant employed by the executive board.

C.R.S. §38-33.3-303. Thus, construing the allegations in the Amended Complaint as true, as the Court must, Plaintiff's allegations of breach of fiduciary are cognizable against these HOA defendants under CCIOA and the Colorado Non-Profit Corporations Act. The facts and claims of this case as presented in the Amended Complaint do implicate the HOA Defendant's fiduciary duties under the statutes cited by Defendants. Judgment on the pleadings on this claim must be denied.

## REQUEST FOR LEAVE TO AMEND

Should the Court conclude that the Amended Complaint is lacking in any way, Plaintiff requests the Court to permit him to further amend his complaint to cure any such pleading deficiencies.

## CONCLUSION

The Court has a unique opportunity in this case to establish precedent on issues that should prevent HOAs and their attorneys from continuing to visit such injustices and real damage on owners. More than 60% of homeowners in Colorado live under an HOA. There are a handful of attorneys in Colorado that employ scorched earth tactics to render owners such as Mr. Wolf homeless so they personally can reap the financial gains. This case presents an opportunity for the Court to set legal guidance where none currently exists, to dissuade these Defendants and the others like them from prioritizing inflated attorneys' fees and costs over the physical and mental wellbeing of owners, like Mr. Wolf, who lack the power and resources to fight them. Just as bullying is not tolerated in other settings, so should it be eradicated in this one.

WHEREFORE, for the reasons set forth above, the Plaintiff Richard Wolf respectfully requests this court to DENY Defendants' Motions for Judgment on the Pleadings in their entirety, and to award him (and the Fund that makes pro bono civil representations possible) the costs and fees incurred in opposing Defendants' Motions.

DATED and DONE at Denver, Colorado on Monday, August 9, 2021

Respectfully submitted,

s/ Nina H. Kazazian
Nina H. Kazazian
KAZAZIAN & ASSOCIATES, LLC
825 E. Speer Blvd., Suite 100H
Denver, CO  80218
Tel:  (303) 888-1100
Email: Nina@Kazazian.com

CERTIFICATE OF SERVICE

I hereby certify that on Monday, August 9, 2021, I electronically filed the foregoing Response and annexed Exhibits with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record for the Defendants at their ECF-registered email addresses:

s/   Nina H. Kazazian